# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-7646 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Banks ("Plaintiff") brings this action against Defendants the City of Chicago ("City") and Chicago Police Officers Bolton ("Bolton"), Orlando ("Orlando"), and Kubik ("Kubik") pursuant to 42 U.S.C. § 1983 and Illinois state law for alleged violations of his civil rights stemming from his 2013 arrest, prosecution, and acquittal for delivery of a controlled substance. This matter is before the Court on Defendants' motion for summary judgment [51]. For the reasons explained below, the Court denies Defendants' motion [51]. This case is set for status hearing on January 11, 2018 at 9:00 a.m.

## I. Background

The Court takes the relevant facts from the parties' Local Rule 56.1 statements and exhibits thereto, [53], [62], [65]. The following facts are undisputed unless otherwise noted.

On September 9, 2013, Officers Bolton, Orlando, and Kubik were working as Chicago police officers on a narcotics team. Bolton was a surveillance officer and Orlando and Kubik were enforcement officers. Bolton was conducting surveillance near the intersection of Madison and Kildare. See [62] at 2; [65] at 2. He was sitting in a vehicle and communicating with the rest of the narcotics team using a push-to-talk radio.

Bolton testified that he observed a transaction between a man who was wearing a "white tank top" (see [53-3] at 25), whom he later identified as Plaintiff, and another man, later identified as Stanford Clacks ("Clacks"). Bolton testified that he observed Clacks approach Plaintiff and have a short conversation. Bolton testified that Plaintiff then crossed the street, reached down by a tree, picked up a brown paper bag from the ground near the tree, crossed back over the street to Clacks, reached into the brown paper bag, removed an item, and gave something to Clacks in exchange for money. Bolton testified that he could not see what Plaintiff gave Clacks because Plaintiff had a closed fist. Orlando testified that Bolton told him that he observed a "hand-to-hand" transaction. See [62] at 3. Orlando also testified that the transaction took place in an area known for narcotics transactions.

Plaintiff disputes all of Bolton's observation of the alleged transaction between Plaintiff and Clacks. Plaintiff testified at his deposition that he did not sell drugs to Clacks. According to Plaintiff, he was selling loose cigarettes near the intersection of Madison and Kildare on September 9, 2013. Plaintiff testified that Clacks approached him to buy two cigarettes. Plaintiff testified that Clacks handed him a dollar bill and he allowed Clacks to remove two cigarettes from a pack of cigarettes. It is undisputed that this transaction was out in the open; however, Defendants dispute that the transaction was for cigarettes. Plaintiff states in a declaration (and Defendants dispute) that between the time he first spoke to Clacks and the time he was arrested, Plaintiff stayed in the same position on the sidewalk and did not cross the street. According to Plaintiff, he never reached down by a tree; never picked up a brown paper bag from the ground near a tree; never reached into a brown paper bag or removed an item from a brown paper bag; and never gave anything that he had taken out of a brown paper bag to another person.

Bolton radioed the rest of his narcotics team and told them that he had observed a hand-to-hand transaction that he believed to be narcotics transaction. Bolton described both of the individuals that engaged in the transaction. He described the seller as wearing a white tank top. [62] at 5 (citing [53-3] at 25).

Orlando and Kubik were in a car about two blocks away. They drove to where Bolton saw the transaction, arriving about two minutes later. Bolton testified at trial that he "observed [Plaintiff] look in the direction of the approaching enforcement vehicle" and "toss[] [a] brown paper bag to the ground." [53-3] at 18. Plaintiff testified that he never tossed a brown paper bag onto the ground. Police officers never recovered the brown paper bag that Bolton observed.

Plaintiff testified that Orlando and Kubik arrived about ten seconds after Plaintiff sold the cigarettes to Clacks; Defendants dispute this timing. See [53-5] at 15. When Orlando and Kubik arrived they got out of their vehicle and detained Plaintiff and Clacks. Plaintiff was searched and placed in handcuffs. The parties dispute whether Plaintiff was placed under arrest at this time, or later. They also dispute the extent of the officers' search; Plaintiff asserts that during the initial search, Orlando pulled on his shorts and underwear, looked into his crotch area, and was able to see his genitals.

According to Plaintiff, seconds after Orlando and Kubik arrived, two other officers pulled up and then all four officers ran around the corner, returning 15 to 20 seconds later. Defendants dispute that this occurred. Kubik searched Clacks and found five packets of a substance suspected to be heroin. Plaintiff and Clacks were officially placed under arrest. Later, Plaintiff was searched again and found to be in possession of $89 in cash. See [62] at 8.

Orlando testified at his deposition that the only reason he arrested Plaintiff was Kubik's statement that she found drugs on Clacks and Bolton's statement that he observed Plaintiff sell

3

drugs to Clacks. Orlando also testified that Plaintiff did not have cigarettes on his person at the time of arrest, that he did not see Plaintiff with cigarettes, and that he did not ever know that Plaintiff had cigarettes on him.

Orlando completed and signed a Complaint for Preliminary Examination charging Plaintiff with delivery of a controlled substance. Orlando, Kubik, and Bolton completed police reports stating that Plaintiff was the seller in the drug transaction witnessed by Bolton. No Defendant testified at Plaintiff's bond hearing. Orlando testified at Plaintiff's preliminary hearing, at which probable cause was found to continue Plaintiff's detention. Plaintiff was continuously detained from the date of his arrest, September 9, 2013, through his trial in January 2015.

At Plaintiff's bench trial, Bolton testified that he observed an unknown "female that was … talking to [Plaintiff] earlier walk eastbound and reach down and what I believe to pick up the paper bag and continue[] to walk eastbound." [53-3] at 20. Orlando testified that while Plaintiff and Clacks were being detained, there "was contact of a Female that was walking by in our vicinity and grabbing a small brown bag." *Id*. at 36. The police reports contain no mention of the alleged unknown female. At the conclusion of the trial, Plaintiff was found not guilty and released from detention.

Plaintiff brings suit against Bolton, Orlando, Kubik, and the City pursuant to 42 U.S.C. § 1983 for violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. See [1]. Plaintiff alleges that he did not sell drugs to Clacks and did not undertake any acts that could have caused a reasonable police officer to believe that he had engaged in any wrongdoing. Plaintiff further alleges that Bolton, Orlando, and Kubik fabricated evidence, causing him to be held in custody and prosecuted for selling drugs. Specifically,

4

Plaintiff alleges that the Defendant officers 1) prepared police reports with the material false statement that they had observed Plaintiff engage in a suspected drug transaction with Clacks; and 2) concocted a false story that they were unable to recover the paper bag from which Plaintiff removed drugs, because an unknown female took the bag as Plaintiff was being arrested. Plaintiff also alleges, against the City only, that as a result of the Defendant officers' actions he was subjected to a malicious prosecution in violation of Illinois law.

Currently before the Court is Defendants' motion for summary judgment.

## II. Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (citation omitted).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. Analysis

#### A. Fourth Amendment

The Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, see *Bailey v. United States*, 568 U.S. 186, 192 (2013), "prohibits government officials from detaining a person in the absence of probable cause," *Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017). "[P]robable cause for an arrest exists 'if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime.'" *United States v. Sands*, 815 F.3d 1057, 1062 (7th Cir. 2015) (quoting *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013)).

A preliminary issue that the Court must address is whether Plaintiff's Fourth Amendment claim is based solely on his initial arrest, or also on his continued incarceration. The Supreme Court recently held in *Manuel* that "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case."

137 S. Ct. at 918. According to Plaintiff, his Fourth Amendment claim is governed by *Manuel* and is based on both his arrest and continued detention up until trial.

Defendants argue that Plaintiff is precluded from bringing a Fourth Amendment claim based on his continued detention, because Plaintiff filed his complaint before *Manuel* was decided; Plaintiff's complaint does not "specify that he is bringing a claim under *Manuel*"; and Defendants "reasonably believed" that Plaintiff's Fourth Amendment claim was "based on his initial arrest, and not on his continued incarceration." [64] at 4-5. Defendants also argue that a Fourth Amendment claim based on *Manuel* would be "premature" because "the Seventh Circuit has not yet stated its elements." *Id*. at 5.

Defendants have identified no persuasive reason why Plaintiff's Fourth Amendment claim should be limited to Plaintiff's initial arrest. *Manuel* is binding on this Court. There is nothing in that opinion that suggests that a Fourth Amendment claim based on continued detention cannot be brought until the Seventh Circuit (or another court) issues an opinion identifying the elements of the claim. Further, Plaintiff's complaint is worded broadly enough to include a Fourth Amendment claim based on Plaintiff's continued detention awaiting trial. Plaintiff alleges that, "[a]s a result of defendants' wrongful acts, plaintiff was charged with an offense and held at the Cook County Jail until he was exonerated on January 26, 2015 and thereby deprived of rights secured by the Fourth and Fourteenth Amendments." [1] at 3, ¶ 11.

The Court now turns to the issue of probable cause. Defendants argue that they had probable cause to conduct an investigatory *Terry* stop of Plaintiff for suspected narcotics sales because (1) it is undisputed that Bolton saw Clacks give money to Plaintiff and Plaintiff give an object to Clacks, which Bolton could not see; and (2) the transaction took place in an area known for narcotics sales (*United States v. Jackson*, 300 F.3d 740, 746 (7th Cir. 2002)). Defendants

7

further argue that, even if Bolton's observations of a suspected drug transaction were inaccurate, they gave Orlando and Kubik a reasonable basis to conduct a further investigation. Once Orlando and Kubik conducted the *Terry* stop and found drugs on Clacks and $89 on Plaintiff, Defendants argue, they had probable cause to arrest Plaintiff.

In response, Plaintiff argues that the issue of probable cause cannot be resolved at summary judgment because there are disputed questions of material fact. Specifically, Plaintiff argues that "[t]he record, viewed in the light most favorable to plaintiff, shows that defendant Bolton observed a man sell drugs to Clacks; Bolton then radioed his observations to defendant Orlando and Kubik. After Bolton had seen the drug deal, but before Orlando and Kubik arrived, Clacks bought cigarettes from Banks. Orlando and Kubik arrested Banks and Clacks because they were near each other, but Bolton told them over the radio that Banks was the wrong man. Orlando and Kubik then ran around the corner looking for the man in the white tank top, could not find him, and elected to make false charges against plaintiff Banks." [63] at 8. If they accepted this version of the facts, Plaintiff argues, reasonable jurors could reject Defendants' "argument that officer Bolton's detailed description of a man in a white tank top selling drugs could have been based on having seen Banks, who was not wearing a white tank top, sell loose cigarettes." [63] at 2.

The Court concludes that there are disputed questions of material fact concerning whether the Defendant officers had probable cause to stop, arrest, or swear a complaint against Plaintiff and, therefore, Defendants are not entitled to summary judgment on Plaintiff's Fourth Amendment claim. As an initial matter, the Court cannot determine at the summary judgment stage that Orlando and Kubik's first contact with Plaintiff was an investigatory *Terry* stop, which must be supported by only a "'reasonable articulable suspicion that criminal activity is afoot,'"

8

rather than an arrest, which must be supported by "probable cause." *Green v. Newport*, 868 F.3d 629, 633-34 (7th Cir. 2017). In a *Terry* stop, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983). "A *Terry* stop that is too prolonged or unreasonably intrusive becomes a de facto arrest that must be based on probable cause." *United States v. Amaya*, 227 F. Supp. 3d 930, 935 (N.D. Ill. 2016) (citing *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011)).

Here, Plaintiff argues in his response brief that his initial detention was more intrusive than allowed for a *Terry* stop, because he was handcuffed and Orlando pulled on his shorts and underwear, looked into his crotch area, and was able to see his genitals. Defendants do not address this argument in their reply brief, arguing instead only that "Plaintiff's search, even as described by Plaintiff, was supported by probable cause and did not go beyond the bounds of a search incident to arrest." [64] at 11. Since Defendants appear to concede that, taking Plaintiff's version of his initial detention as true, the detention constituted an arrest rather than a *Terry* stop, the Court will evaluate Plaintiff's Fourth Amendment claim under the "probable cause" standard.

The Court now turns to the evidence concerning probable cause. Defendants argue that they had probable cause to stop and detain Plaintiff based on (1) Bolton's observation of the alleged drug transaction between Plaintiff and Clacks; and (2) the fact that the transaction took place in an area known for drug sales. "[P]robable cause cannot stem only from a suspect's presence in a high-crime area." *Huff v. Reichert*, 744 F.3d 999, 1007–08 (7th Cir. 2014). Thus, Bolton's alleged observation of a drug transaction was necessary to supply probable cause for the initial stop of Plaintiff. The Court concludes that a reasonable jury, accepting Plaintiff's version of events as true, could find that Bolton could not have mistaken Plaintiff's sale of cigarettes to

9

Clacks as the drug transaction he observed and therefore did not have probable cause to stop and detain Plaintiff.

Defendants claim that Plaintiff "does not dispute the key fact: a transaction occurred between Plaintiff and Clacks, and Defendant Bolton saw it." [64] at 2. But Plaintiff does dispute that Bolton saw a transaction between him and Clacks on several bases. First, Plaintiff testified that transaction for loose cigarettes occurred just a few seconds before Orlando and Kubik pulled up. In Plaintiff's view of the events, the transaction Bolton saw was completed about two minutes earlier, while Bolton was watching from his surveillance car.

Second, Plaintiff submits that Bolton's description of the seller, which he communicated to Orlando and Kubik, did not match Plaintiff. According to Bolton, he observed from his squad car a man in a white tank top engage in a hand to hand transaction with another man. When Plaintiff was detained two minutes later, however, he was wearing a white t-shirt with thick red stripes. See [63] at 1. Defendants argue that "there is no evidence the shirt that Plaintiff was wearing was not, in fact, the shirt referred to by Bolton in his reports." 64 at 7. But a reasonable juror would not need additional evidence to look at Plaintiff's booking photo and read Bolton's description of the suspected drug dealer to evaluate whether the difference between the two is substantial enough that the Defendant officers lacked probable cause to believe that Plaintiff was the dealer.

Third, Plaintiff points out that Bolton's description of the drug transaction that he observed is significantly different than Plaintiff's description of his sale of loose cigarettes to Clacks. Bolton testified that he observed the seller cross the street, pick up a paper bag, go back across the street, take something out of the paper bag, and exchange it for money from Clacks. Plaintiff states in his declaration, however, that he never crossed the street, never picked up a

paper bag, and never took anything out of a paper bag. And no paper bag was found on Plaintiff when he was detained. Further, according to Plaintiff, Orlando and Kubik ran around the corner after detaining him, suggesting that they were still looking for the dealer and did not believe that Plaintiff was the dealer. A reasonable juror, believing Plaintiff's testimony of how the cigarette sale and his initial detention by Defendants occurred, could conclude that Bolton could not have mistaken that sale for the detailed drug transaction he observed, and Orlando and Kubik did not mistake Plaintiff for the dealer that Bolton described to them.

Defendants also base their argument that there was probable cause to arrest Plaintiff on the fact that heroin was discovered on Clacks' person. However, as Plaintiff argues, Clacks' "possession of the drugs is consistent with plaintiff's version of the facts, *i.e.*, that Clacks bought drugs from a man in white tank top, and not from plaintiff," [63] at 10, and that Defendants knew that Plaintiff did not match the description of the dealer that Bolton gave to the other officers.

Even if they did not have probable cause to detain or arrest Plaintiff for selling drugs, Defendants argue, "Plaintiff's admission to breaking the law" by selling loose cigarettes "provides probable cause for his arrest, thus defeating any Fourth Amendment claim." [64] at 11. It is true that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Instead, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id*. at 152. Here, however, Defendants have come forward with no evidence that, at the time of Plaintiff's arrest or detention, Defendants had any reason to believe that Plaintiff was selling loose cigarettes to Clacks. Defendants do not claim, for instance, that Plaintiff told them at the time that he was detained that he was selling loose cigarettes rather than drugs. Further, Orlando

testified that Plaintiff did not have cigarettes on his person at the time of arrest, that he did not see Plaintiff with cigarettes, and that he did not ever know that Plaintiff had cigarettes on him. Therefore, the Court cannot conclude based on the record before it that Plaintiff's alleged illegal sale of loose cigarettes were "facts known to [the Defendant officers] at the time of the arrest," as would support a finding of probable cause. *Id*. In addition, Defendants concede that an arrest for selling loose cigarettes—a "fine-only offense[]"—"could not justify sixteen months of imprisonment" while Plaintiff awaited trial. [64] at 12.

For these reasons, the Court concludes that there are disputed material facts that prevent Plaintiff's Fourth Amendment claim from being resolved on summary judgment.

### B. Malicious Prosecution

"In order to establish a claim of malicious prosecution" under Illinois law, "a plaintiff must demonstrate: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Szczesniak v. CJC Auto Parts*, *Inc.*, 21 N.E.3d 486, 490 (Ill. App. 2015). Defendants argue that they are entitled to summary judgment on Plaintiff's malicious prosecution claim because they had probable cause to bring charges against Plaintiff. For the same reasons discussed above in regard to Plaintiff's Fourth Amendment claim, the Court concludes that there are disputed material facts concerning probable cause, which preclude summary judgment on Plaintiff's malicious prosecution claim.

### C. Due Process

"'[A] police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way.'" *Saunders-El v. Rohde*, 778 F.3d 556, 560 (7th Cir. 2015) (quoting *Whitlock v.*

*Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012)). Fabrication of evidence includes "submitting police reports they knew to be false." *Collier v. City of Chicago*, 2015 WL 5081408, at *7 (N.D. Ill. Aug. 26, 2015).

Defendants do not dispute that Plaintiff was deprived of his liberty when he was incarcerated for sixteen months awaiting trial. However, Defendants deny that one of the pieces of evidence identified by Plaintiff was "fabricated," and dispute that the other piece of evidence was used to deprive Plaintiff of his liberty.

First, Plaintiff alleges that Defendants prepared false police reports stating that they observed Plaintiff transferring suspected drugs to Clacks. Defendants argue that this evidence was not fabricated, because they "were allowed to make reasonable inferences from their observations, and, having seen a transaction take place and having found the buyer in the transaction with heroin, were justified in believing that Plaintiff had just sold heroin to Clacks." [52] at 10. Defendants also argue that "[a]ll that the … 'fabricated' statement amounts to is an allegation that the Defendant Officers were incorrect that they had observed Plaintiff sell drugs to Clacks." *Id*. at 11.

The Court concludes that Defendants are not entitled to summary judgment on this part of Plaintiff's due process claim, because a reasonable jury could believe based on the disputed evidence submitted to date and discussed in the preceding sections that "the disputed evidence that [Plaintiff] was not the man in the white tank top that defendant Bolton had observed is enough for a jury to conclude that the officers knew that their reports were false." [63] at 13.

Second, Plaintiff alleges that the Defendant officers concocted a false story that they did not recover the paper bag that Plaintiff kept drugs in because a third party carried it away. Defendants argue that this statement was never used to deprive Plaintiff of his liberty because the

13

only time that any Defendant gave this testimony was during Bolton's testimony at Plaintiff's bench trial, at which Plaintiff was acquitted. See [52] at 11-12; [53] at 4, ¶ 28; [53-3] at 20. In response, Plaintiff argues that a reasonable juror could conclude that this statement was used to deprive Plaintiff of his liberty while awaiting trial, because "[a] jury could infer that the officers communicated the false story to prosecutors who chose to continue plaintiff's prosecution and detention as a result." [63] at 13-14. In reply, Defendants argue that there is no evidence that the Defendant officers ever told this story to prosecutors before trial, or that this story was used to detain Plaintiff pending trial.

The Court concludes that a reasonable jury could conclude that the Defendant officers concocted a story and communicated it to the prosecutor prior to trial about an unknown female picking up the bag that Plaintiff dropped. The prosecutor elicited this testimony from Bolton on direct examination. See [53-3] at 20 (prosecutor asking Bolton, "[n]ow, after you radioed to enforcement officers that you had seen the defendant drop the brown paper bag what, if anything, did you observe next?"). Given that attorneys typically prepare their witnesses and lines of questioning prior to trial, it is not a stretch of the imagination that Bolton may have discussed the unknown female with the prosecutor at some point prior to trial. Further, it was not only Bolton who testified about the unknown female. Orlando, in response to the question, "Did Officer Bolton ever radio you about a female picking up a bag," testified on cross-examination that while Plaintiff and Clacks were being detained there "was contact of a Female that was walking by in our vicinity and grabbing a small brown bag." [53-3] at 36.

For these reasons, Defendants' motion for summary judgment on Plaintiff's due process claim is denied.

### D. Qualified Immunity

"'Qualified immunity protects officers performing discretionary functions from civil liability so long as their conduct does not violate *clearly established* statutory or constitutional rights that a reasonable person would know about.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (quoting *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006)). "It protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). Once a defendant raises qualified immunity as a defense, "the plaintiff has the burden of establishing that his or her rights were violated and that the law concerning the proffered right 'was clearly established at the time the challenged conduct occurred.'" *Id.* (quoting *Mustafa,* 442 F.3d at 548). The Court must then determine "whether a reasonably competent official would know that the conduct was unlawful in the situation he confronted." *Mustafa*, 442 F.3d at 548.

"'In determining qualified immunity at the summary judgment stage, the court asks two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation.'" *Kristofek v. Village of Orland Hills*, 832 F.3d 785, 798 (7th Cir. 2016) (quoting *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 648 (7th Cir. 2013)). In conducting the second step of this analysis, the Court's "first task is to consider controlling Supreme Court and Seventh Circuit precedent." *Werner v. Wall*, 836 F.3d 751, 762 (7th Cir. 2016). Courts typically conduct this analysis "by focusing on the 'specific context in the case,' rather than on a 'broad general proposition.'" *Id.* (quoting *McGreal v. Ostrov*, 368 F.3d 657, 683 (7th Cir. 2004)). Nonetheless, "general statements of the law are not inherently incapable of giving fair and clear warning, and in [certain] instances a general constitutional rule

15

already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); see also *Figgs v. Dawson*, 829 F.3d 895, 906 (7th Cir. 2016) ("While, to be clearly established, a right must be specific to the relevant factual context of a cited case and not generalized with respect to the Amendment that is the basis of the claim, the very action in question" need not have previously been held unlawful for a public official to have reasonable notice of the illegality of some action." (internal quotation marks and citations omitted)).

The Court first considers Plaintiff's Fourth Amendment claim. When a "defense of qualified immunity" is raised in a Section 1983 unlawful arrest claim, the court "review[s] to determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th 1998).

Taking Plaintiff's version of the disputed facts as true, the Defendant officers knew that Bolton's description of the suspected dealer did not match Plaintiff, and the only fact they had to support detaining Plaintiff was that they were in a high-crime area. At the time of Plaintiff's arrest, it was clearly established that presence in a high-crime area is not enough to establish probable cause to arrest (let alone to stop under *Terry*). See *Illinois v. Wardlow*, 528 U.S. 119, 139 (2000) ("presence in a high crime neighborhood is a fact too generic and susceptible to innocent explanation to satisfy the reasonable suspicion inquiry" for an investigative *Terry* stop). Therefore, Defendants are not entitled to summary judgment on Plaintiff's Fourth Amendment claim based on qualified immunity. See *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th 2008) (explaining that although "qualified immunity is normally raised during the pretrial phase so that the public official can avoid the burdens of trial," "[i]t is technically possible … to raise the

defense after a jury verdict, if the immunity question itself depended on disputed issues of material fact"); *Reardon v. Wroan*, 811 F.2d 1025, 1030 (7th Cir. 1987) (explaining that where defendant officers' "conclusions with respect to the existence of probable cause could be found to be objectively unreasonable when the facts are viewed in the light most favorable to the plaintiffs," defendants were "not entitled to qualified immunity at th[e] [summary judgment] stage of the proceedings").

The Court now turns to Plaintiff's due process claim. The Seventh Circuit has "consistently held" since prior to Plaintiff's arrest that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012); see also *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ("fabricating evidence against [a criminal defendant] violates clearly established constitutional rights"). If a jury concluded that Defendants falsely identified Plaintiff as the suspected drug dealer and made up the story about an unknown female taking a paper bag from the scene of Plaintiff's arrest, then Defendants would not be entitled to qualified immunity on Plaintiff's Due Process claim.

## IV. Conclusion

For the reasons explained above, the Court denies Defendants' motion for summary judgment [51]. This case is set for status hearing on January 11, 2018 at 9:00 a.m.

Dated: December 15, 2017

_____
Robert M. Dow, Jr.
United States District Judge